FILED

2008 Nov-12  PM 03:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| TELESA HESTER, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | )     **Civil Action No. 06-S-4720-NE** |
| NORTH ALABAMA CENTER | ) |
| FOR EDUCATIONAL | ) |
| EXCELLENCE, | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff, Telesa Hester, who is an African-American female, contends that defendant, the North Alabama Center for Educational Excellence ("NACEE"), violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*., and the Equal Pay Act of 1963, 29 U.S.C. § 206(d), by paying her less than male employees engaged in substantially equal work.[1]  Plaintiff also asserts claims under Title VII against NACEE for retaliation and gender-based harassment.[2]  The action presently is before the court on NACEE's motion for summary judgment.[3]  Upon consideration of the briefs, pleadings, and evidentiary

---

[1] *See* doc. no. 1 (Complaint).

[2] *Id*.

[3] *See* doc. no. 19.

submissions, the court concludes the motion should be granted.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[4]  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [factfinder] to return a verdict in its

---

[4] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal

quotations and citation omitted) (bracketed text suppled).

In the present case, however, NACEE failed to respond to plaintiff's additional

statement of facts in her brief in opposition of NACEE's motion for summary

judgment.  Thus, plaintiff's additional statement of facts are deemed admitted, in

accordance with the following section of this court's Uniform Initial Order:

> The reply submission, if any, shall consist of only the moving
> party's disputes, if any, with the non-moving party's additional claimed
> disputed and undisputed facts.  The moving party's response to the non-
> moving party's additional claimed disputed and undisputed facts shall
> be in *separately numbered paragraphs* that coincide with those of the
> non-moving party's additional claimed disputed and undisputed facts.
> Any statements of fact that are disputed by the moving party must be
> followed by a specific reference to those portions of the evidentiary
> record upon which the disputation is based.  *All additional material
> facts set forth in the statement required of the opposing parties will be
> deemed to be admitted for summary judgment purposes unless
> controverted by the statement of the movant.*[5]

## II. SUMMARY OF FACTS

Plaintiff, Telesa Hester, began working for defendant NACEE as an "education

specialist" on June 1, 2002, at an annual salary of $30,000.[6]  NACEE is a non-profit

---

[5] *See* doc. no. 6 (emphasis original).

[6] *See* doc. no. 19, Statement of Undisputed Facts, at ¶ 1 and doc. no. 20, Exhibit 6 (Personnel Action Form).

organization headquartered in Huntsville, Alabama, and dedicated to the purpose of increasing the enrollment and retention of low-income, first-generation students in post-secondary educational institutions. It pursues those goals by sponsoring supplemental educational programs.[7] The major programs sponsored by NACEE are funded by the United States Department of Education.[8] These programs include an Educational Opportunity Center ("EOC"), an "Upward Bound" program, an "Upward Bound Math and Science" program, and an "Educational Talent Search" program.[9]

The EOC "provides services and activities to adults 19 years of age and over that retain, motivate, encourage, and prepare its participants for matriculation in post[-]secondary programs."[10]

Upward Bound is a college-prep program "designed specifically for low-income students from grades nine through twelve" that provides tutoring, culture activities, career assessments, and preparation for the ACT and GED examinations.[11]

The Upward Bound Math and Science program is similar to Upward Bound with an emphasis on math and science.[12]

---

[7] See doc. no. 1 (Complaint), ¶ 7.

[8] See doc. no. 21 (Affidavit of Dr. Davis).

[9] See doc. no. 19, Statement of Undisputed Facts, at ¶ 5.

[10] Id., Exhibit 10 (Funding Proposal), at 1.

[11] Id., Exhibit 1 (Deposition of Dr. Davis), at 75.

[12] Id. at 78.

The Educational Talent Search is a college-prep program designed "to expose young persons grades six through age 27 to career opportunities, college visits, tutoring, counseling activities, et cetera, et cetera."[13]

At all times relevant to this action, NACEE employed at least one coordinator for each of these programs, and two coordinators for the Educational Talent Search program.[14]   The NACEE staff handbook provides the following definition of "coordinators":

> The coordinators work under the supervision of the Executive Director/President and in coordination with the Program Manager to ensure that program objectives, counseling/tutoring activities are carried out and performed in accordance with stated polices and procedures. The Coordinators are responsible for scheduling counseling/tutoring activities, scheduling the monthly calendar, developing workshops, etc.[15]

NACEE has not produced written job descriptions that differentiate between the various coordinator positions, however.  Rather, a NACCE job description sheet provides the following, general job-description for a "coordinator":  "Coordinates staff activities to ensure that project goals are achieved.  Develops workshops and activities designed to offer current information and innovative approaches to the delivery of services, specifically those relating to the recruitment and retention."[16]

---

[13] *See* doc. 19, Exhibit 1, (Deposition of Dr. Davis), at 79.

[14] *Id.*, Statement of Undisputed Facts, ¶ 5.

[15] *See* doc. no. 20, Exhibit 5 (Staff Handbook), at 13.

[16] *See* doc. no. 19, Exhibit 3 (Coordinator Job Description).

The job-description sheet then lists the following "specific duties" of a "coordinator":

- Coordinates staff's monthly schedule and make [sic] project assignments;

- Develops workshops and activities to be performed by staff, specifically: specifically [sic] workshops that provide adult persons experience that motivate and retain middle through high school students.

- Oversees and conducts assessments; schedules periodic evaluation of staff's abilities and skills as they relate to the program;

- Provides training activities for staff, including scheduling participation in training outside the center;

- Provides personal, academic, and career counseling and assistance with completion of financial aid forms to participants;

- Make presentations at service agencies, middle schools, high schools, public, and social organizations, and the public media;

- Assesses educational materials and presents updated materials and information to the staff;

- Assists with interviews, evaluation, and training of new personnel; assists with annual staff evaluations;

- Provide students with information about the relationship of their abilities and interests to educational choices and occupational requirements.

- Provide workshops to middle and high schools [sic] personnel, staff and students to promote the program.

- Prepare monthly and quarterly reports.

-       Performs other duties as assigned.[17]

Harold Winn, an African-American male, coordinated the Upward Bound Program.[18] NACEE hired Mr. Winn on September 1, 1988, and paid him $60,196 a year as of April 17, 2007.[19] Michelle Cunningham coordinated the Upward Bound Math and Science Program.[20] The record is unclear as to Ms. Cunningham's race and the date on which NACEE hired her, but it paid her $39,682 a year as of April 17, 2007.[21] David Price, an African-American male, coordinated the Educational Talent Search Program.[22] NACEE hired Mr. Price on February 1, 1990, and paid him $49,440 a year as of April 17, 2007.[23] Denise Piskorz, a white female, also coordinated the Educational Talent Search Program.[24] NACEE hired Ms. Piskorz on August 1, 1997, and paid her $39,682 a year as of April 17, 2007.[25] However,

---

[17] *Id.*

[18] *See* doc. no. 1 (Complaint), ¶ 9 and doc. no. 19, ¶ 5.

[19] *See* doc. no. 19, ¶ 5 and doc. no. 20, Exhibit 6 (Personnel Action Form).

[20] *See* doc. no. 19, Statement of Undisputed Facts. ¶ 5.

[21] *Id.* and doc. no. 20, Exhibit 6 (Personnel Action Form).

[22] *See* doc. no. 1 (Complaint), ¶ 9 and doc. no. 19, Statement of Undisputed Facts, ¶ 5.

[23] *See* doc. no. 19, Statement of Undisputed Facts, ¶ 5 and doc. no. 20, Exhibit 6 (Personnel Action Form).

[24] *See* doc. no. 19, Statement of Undisputed Facts, ¶ 5.

[25] *Id.* and doc. no. 20, Exhibit 6 (Personnel Action Form).

plaintiff characterizes Ms. Piskorz as "a coordinator in name only."[26]

Plaintiff asserts that Dr. Harold G. Dickerson, a former NACEE Executive Director, named her the interim coordinator of the Educational Opportunity Center in March of 2003.[27]  Plaintiff further asserts that Evelyn Smith, a former assistant to Dr. Dickerson, told her that her salary as interim coordinator of the EOC would be raised to $52,000 per year.[28]  Later in 2003, however, the Office of the Inspector General of the United States Department of Education conducted an audit of NACEE's activities.[29]  As a result of those audit findings, NACEE was "defunded" in September of 2003, meaning that it lost all of its funding from the Department of Education.[30]  Dr. Dickerson resigned and Ms. Smith was released by the NACEE Board of Directors.[31]

NACEE implemented the audit recommendations of the Inspector General in 2004, and regained approximately seventy-five percent of its previous funding from the Department of Education.[32]  NACEE hired Dr. Earnest Davis as its new Executive

---

[26] *See* doc. no. 1 (Complaint).

[27] *See* doc. no. 1 (Complaint), ¶ 3 and doc. no. 20, Plaintiff's Statement of Undisputed Facts, ¶ 4.

[28] *See* doc. 19, Exhibit 2 (Deposition of plaintiff), at 76.

[29] *See* doc. no. 21 (Affidavit of Dr. Davis).

[30] *Id*.

[31] *Id*.

[32] *Id*. and doc. no. 19, Statement of Undisputed Facts, at ¶ 49.

Director in March of 2004.[33]   That same month, Dr. Davis named plaintiff as the

permanent coordinator of the Educational Opportunity Center.[34]   Plaintiff was

supervised by Mr. Robert Tibbs, who served as the program manager of the EOC.[35]

Plaintiff's salary was never raised to $52,000 a year, however; rather, her salary as

of April 17, 2007 was $44,538 a year.[36]

It is undisputed that salary differentials between plaintiff and Mr. Winn and

Mr. Price existed at the time of plaintiff's employment at NACEE in 2002, and at the

time she was named as the permanent coordinator of the EOC in 2004.[37]   It is also

undisputed that none of the five coordinators received a salary increase from January

1, 2004, to the date on which this action was filed.[38]   With regard to salary increases,

the NACEE staff handbook states:

> Whenever fiscally possible, salary increases will be effective once
> a year on the basis of performance evaluation.   Raises take effect the
> first day of the new fiscal year, which is September 1 for all programs.
> The rate of increases is discretionary and may include cost-of-living and
> merit.   Salary increases, however, are dictated by availability of funds
> and may not be possible when funding for a new fiscal year is held to

---

[33] *See* doc. no. 19, Exhibit 1 (Deposition of Dr. Davis), at 6.

[34] *See* doc. no. 1 (Complaint).

[35] *See* doc. no. 19, Statement of Undisputed Facts, ¶ 4.

[36] *See* doc. no. 20, Exhibit 6 (Personnel Action Form).

[37] *See* doc. no. 19, Statement of Undisputed Facts, ¶ 12.

[38] *See* doc. 19, Exhibit 1 (Deposition of Dr. Davis), at 74-75 and doc. no. 20, Statement of undisputed facts, ¶ 33.

the previous year's level.  Successful completion of the probationary period is not accompanied by a salary increase.[39]

Plaintiff's supervisor, Robert Tibbs, testified that he heard plaintiff complain that "she should be paid a general salary, a comparative salary that other personnel who hold her title should receive."[40]  Mr. Tibbs further testified that he referred plaintiff to Dr. Davis, because he did not handle pay and payroll issues in his position as program manager of the EOC.[41]  The record is unclear as to whether plaintiff subsequently approached Dr. Davis with her complaint of unequal pay.  Dr. Davis did testify that he had an initial meeting with plaintiff shortly after he was hired in March of 2004, and that plaintiff mentioned her salary at that meeting.[42]  Even so, the record is unclear as to whether plaintiff specifically complained to Dr. Davis that her salary was lower than the salaries of the male coordinators.

Plaintiff asserts that, after pursuing equitable pay from NACEE, Dr. Davis and Mr. Tibbs retaliated against her and subjected her to discriminatory conduct.[43]  Plaintiff asserts that Dr. Davis retaliated against her by eliminating several of her job

---

[39] Doc. no. 20, Exhibit 5 (Staff Handbook), at 38.

[40] *See* doc. 19, Exhibit 3 (Deposition of Robert Tibbs), at 35.

[41] *Id.*

[42] *See* doc. 19, Exhibit 1 (Deposition of Dr. Davis), at 33.

[43] *See* doc. no. 1 (Complaint).

duties and undermining her authority.[44]  For example, plaintiff asserts that he denied her the opportunity to attend a training conference that the other coordinators attended, and prohibited her from assisting in drafting a funding proposal, even though she had expressed an interest in doing so and had been told by Dr. Davis that she would be asked to assist with the proposal.[45]  Plaintiff also asserts that Dr. Davis undercut her authority by instructing her subordinates without her knowledge.[46]

Plaintiff further testified that Dr. Davis told her that Mr. Tibbs had "a problem with [her] as a woman."[47]   On March 3, 2005, Mr. Tibbs gave plaintiff a memorandum that she describes as a "threatening and lecturing style memo" that "counsel[ed] her on her EOC coordinator duties and responsibilities."[48]   The memorandum stated that it was "given to disseminate information relative to [plaintiff's] role as EOC Counselor and Coordinator."[49]  The memorandum outlined plaintiff's duties and gave her advice, such as "[r]emember, you are not the boss, you are a supervisor," and "some situations are not *worth the water poured over a duck's*

---

[44] *See* doc. no. 20, Statement of Undisputed Facts, ¶¶ 6, 10.

[45] *See* doc. no. 19, Exhibit 15 (E-mail from plaintiff to Dr. Davis).

[46] *See* doc. no. 1 (Complaint), at 3.

[47] *See* doc. no. 19, Exhibit 2 (deposition of plaintiff), at 24.

[48] *See* doc. no. 1 (Complaint).

[49] *See* doc. no. 19, Exhibit 4 (March 3, 2005 memorandum).

*back: The situation is too petty to waste time on its demands*."[50]  Mr. Tibbs testified

that the memorandum was intended

> to give [plaintiff] a step-by-step operation and how to generally handle
> people as a supervisor and still be a counselor, that she was in charge
> and not totally in control of people, that she was not the boss, meaning
> that Dr. Davis was in charge in terms of any decisions that needed to be
> made.[51]

Plaintiff also testified that Mr. Tibbs retaliated against her by giving her low

marks on her performance evaluation in October of 2006.  Plaintiff asserts that Mr.

Tibbs excluded her from staff meetings and interviews, and stopped asking her to

train new personnel.  Lastly, plaintiff asserts that Mr. Tibbs shifted some of his

auditing responsibilities to her, for the purpose of overwhelming her, so as to

negatively affect her performance evaluation and provide Dr. Davis with a ground to

terminate her employment.[52]  In a deposition plaintiff was asked: "In your experience

with Mr. Tibbs, did he do anything to you that made you feel that he was

discriminating you or mistreating you because you are a woman?"[53]  Plaintiff replied:

"Not in my experience with him, per se."[54]  However, later in the same deposition,

---

[50] *Id*. (emphasis in original).

[51] Doc. 19, Exhibit 3 (Deposition of Robert Tibbs), at 68-69.

[52] *See* doc. no. 1 (Complaint).

[53] Doc. no. 19, Exhibit 2 (Deposition of plaintiff), at 25.

[54] *Id*.

plaintiff was asked whether "Mr. Tibbs acted in a discriminatory way toward [her]," and she replied: "Yes. I feel like Mr. Tibbs acted discriminatory even with the last evaluation that I received."[55]

Plaintiff asserts that she experienced severe stress as a result of the allegedly discriminatory and hostile conduct by Dr. Davis and Mr. Tibbs.[56] Plaintiff missed several days of work because of her stress, and her physician issued her an "approval to return to school/work" form on November 8, 2005, that contained this restriction: "medical illness restricted travel to and from local office for 6 w[eeks] within a 15 mile radius."[57] In a letter dated November 16, 2005, Dr. Davis wrote plaintiff that the vague information on her return to work form "prevents NACEE from determining what may be properly asked of you without violating the medical restriction," and requested that she obtain more specific information from her physician.[58] Plaintiff contends that Dr. Davis had not requested specific medical information from other employees, and that his request was a clear violation of her "physician-patient relationship."[59] Plaintiff's complaint alleges:

---

[55] *Id*. at 77.

[56] *See* doc. no. 1 (Complaint).

[57] Doc. no. 19, Exhibit 12.

[58] *Id*., Exhibit 13.

[59] *See* doc. no. 1 (Complaint).

> As a result of Dr. Davis; [sic] discriminatory conduct, [plaintiff] over the last year has experienced unfairness, harassment, intimidation, a hostile work environment, her authority as a supervisor undermined, bullying, isolation and severe stress that caused weight loss and weight gain, in a short period of time, and has made her physically ill resulting in her doctor putting her on sick leave.[60]

Plaintiff filed a charge of discrimination against NACEE with the Equal Employment Commission ("EEOC") on or about December 15, 2005.[61]  The EEOC subsequently issued notice of her right-to-sue.[62]  This suit followed.

## III. DISCUSSION

### A.   Title VII Gender-Based Wage Discrimination Claim

NACEE first argues that plaintiff's Title VII gender-based, wage-discrimination claim is untimely, because plaintiff filed her EEOC charge on or about December 15, 2005, more than 180 days after she was named EOC coordinator in the Spring of 2004, and the salary differentials between her and the male coordinators were in place on that date.  NACEE notes that, in the Supreme Court's recent decision in *Ledbetter v. Goodyear Tire and Rubber*, — U.S. —, 127 S. Ct. 2162 (2007), the Court discussed whether a discriminatory act that triggers a statute of limitations occurs when an employer sets an employee's pay, or when the aggrieved employee

---

[60] *Id*. at ¶ 9.

[61] *Id*. at ¶ 2 and doc. no. 20, at 23.

[62] *See* doc. no. 1 (Complaint), ¶ 2.

becomes aware of a gender-based wage or salary disparity.  The Court ruled as follows:

> We have previously held that the time for filing a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC) begins when the discriminatory act occurs.  We have explained that this rule applies to any "[d]iscrete ac[t]" of discrimination, including discrimination in "termination, failure to promote, denial of transfer, [and] refusal to hire." *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Because a pay-setting decision is a "discrete act," it follows that the period for filing an EEOC charge begins when the act occurs.

— U.S. at —, 127 S. Ct. at 2165.  Consequently, because plaintiff failed to submit her charge of discrimination to the EEOC within 180 days of the date on which NACEE named her permanent EOC coordinator and her salary was set below the salaries of the male coordinators, her Title VII gender-based wage discrimination claim is time barred.  *See* 42 U.S.C. § 2000e-5(e)(1); *see also, e.g., Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000) ("No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge.").

## B.    Equal Pay Act Claim

Plaintiff also asserts a gender-based, wage-discrimination claim under the Equal Pay Act, based on the fact that NACEE paid the two male coordinators, Mr.

Winn and Mr. Price, more than her.  The Equal Pay Act was enacted in 1963, and made part of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*., under which it has been administered and enforced.  The text of the statute provides, in pertinent part, that:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment *for equal work on jobs the performance of which requires equal skill*, *effort*, *and responsibility*, *and which are performed under similar working conditions*, except where such payment is made pursuant to (I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex:  . . . .

29 U.S.C. § 206(d)(1) (emphasis supplied).  Therefore, in order to avoid summary judgment on her Equal Pay Act claim, plaintiff bears the initial burden of demonstrating that NACEE pays a different wage to a male employee "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." *Id*.; *see also*, *e.g.*, *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); *Arrington v. Cobb County,* 139 F.3d 865, 876 (11th Cir. 1998) (citing *Waters v. Turner, Wood & Smith Insurance Agency, Inc.,* 874 F.2d 797, 799 (11th Cir. 1989)).  As the Eleventh Circuit observed in *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d. 1518 (11th Cir.

1992),

> [t]he plaintiff need not prove that the job held by her male comparator
> is identical to hers; she must demonstrate only that skill, effort, and
> responsibility required in the performance of the job are "substantially
> equal."  29 U.S.C. § 206(d)(1); 29 U.S.C. § 206(d)(1); *Corning Glass
> Works*, 417 U.S. at 204, 94 S. Ct. at 2232-33; *Brock v. Southwestern
> College*, 765 F.2d 1026, 1032 (11th Cir. 1985).  Although job titles are
> entitled to some weight in this evaluation, "the controlling factor under
> the Equal Pay Act is job content" — the actual duties that the respective
> employees are called upon to perform.  *Hodgson v. Behrens Drug Co.,*
> 475 F.2d 1041, 1049 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S. Ct.
> 121, 38 L. Ed.2d 55 (1973).

*Miranda*, 975 F.2d at 1533.  *See also Alford v. Cosmyl, Inc.,* 209 F. Supp. 2d 1361,

1371 (M.D. Ga. 2002) (holding that "[t]he issue at the summary judgment stage is

whether a reasonable jury could conclude that [plaintiff's] job was substantially equal

to the job of fellow male employees, and yet she was [paid] less") (citing *Waters*, 874

F.2d at 799).  Thus, the core requirement for establishing a cognizable Equal Pay Act

claim is that plaintiff meet "the fairly strict standard of proving that she performed

substantially similar work for less pay" than a male counterpart.  *Miranda,* 975 F.2d

at 1526.

Once a plaintiff establishes a *prima facie* case, the burden shifts to the

employer to prove by a preponderance of the evidence that the pay differential is

justified by one of the four exceptions, or affirmative defenses, listed in the Equal Pay

Act itself.  *See*, *e.g.*, *Corning Glass Works,* 417 U.S. at 196; *Irby v. Bittick*, 44 F.3d

949, 954 (11th Cir. 1995); *Meeks v. Computer Associates International*, 15 F.3d 1013, 1018 (11th Cir. 1994). Those exceptions are: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any . . . factor other than sex." 29 U.S.C. § 206(d)(1). The employer's burden of proof for those affirmative defenses is a "heavy one," because it "must show that the factor of sex provided no basis for the wage differential." *Irby*, 44 F.3d at 954 (quoting *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 590 (11th Cir. 1994)) (internal quotation marks omitted). If the employer carries that burden, "the plaintiff must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based discrimination. . . . If plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial." *Irby*, 44 F.3d at 954 (citations omitted).

NACEE disputes that plaintiff has established that her position as coordinator of the EOC is "substantially equal" to the coordinator positions of Mr. Winn and Mr. Price. NACEE argues that, even though the position of "coordinator" is a general position within the organization, the position functions differently within each program, and, requires distinctive skill-sets within each program. In its brief in support of summary judgment, NACEE vaguely asserts that "[t]he coordinator jobs

are not identical," and that "[plaintiff's] job is not precisely the same job as that of the other coordinators."[63]  However, as noted above, under the EPA a plaintiff need not prove that the positions are *identical*, or precisely the same, but that the "skill, effort, and responsibility required in the performance of the job are *substantially equal*." *Miranda*, 975 F.2d at 1533 (emphasis supplied).

After consideration of the parties' submissions, this court finds that a genuine issue of material fact exists as to whether the coordinator position occupied by plaintiff, as compared to the positions held by Mr. Winn and Mr. Price, were substantially equal.  Although the court recognizes that the same job title is not determinative of whether jobs are substantially equal, NACEE has failed to produce specific documentary evidence indicating that the actual duties of Mr. Winn and Mr. Price differed from those of plaintiff.  NACEE has only produced a written job description for the general position of "coordinator," and not the specific coordinator positions for each program.  Although NACEE contends that plaintiff does not transport minors, the relevance of that assertion is not clear, because defendant has not presented evidence indicating that Mr. Winn or Mr. Price transported minors. Additionally, although NACEE asserts that "[s]ome coordinators have dual roles and teach classes to students," it does not specify that Mr. Winn and Mr. Price have these

---

[63] *See* doc. no. 19, at 18-19.

dual roles and that plaintiff does not.[64]  The court finds that plaintiff has established a common core of tasks among the coordinators with the NACEE's general job description in the staff handbook and the job description sheet, as well as evidence indicating that NACEE pays male coordinators more than plaintiff.  Therefore, plaintiff has established a *prima facie* violation of the Equal Pay Act.

NACEE asserts two of the four statutory affirmative defenses as the reasons for the pay disparity between plaintiff, on the one hand, and Mr. Winn and Mr. Price on the other:  *i.e.*, (1) a seniority system; and (2) a "factor other than sex."  *See* 29 U.S.C. § 206(d)(1).  NACEE asserts that Mr. Winn and Mr. Price were paid more than plaintiff because of incremental salary increases they received over their respective years of employment with NACEE — tenures that are far longer than plaintiff's.  In that regard, Dr. Davis testified that Mr. Winn and Mr. Price were paid more than plaintiff because of the former's seniority in service.

> Mr. Winn has been with the agency for about 20 years.  Mr. Price has been with the agency about 17 years, and [plaintiff] has been with the agency for about six or seven years.  And if you start with $30,000 and increase that back to about 20 years ago, increase it each year, that would be their salaries.[65]

NACEE further argues that seniority explains the difference between Mr. Winn's

---

[64] *Id*. at 19.

[65] *See* doc. 19, Exhibit 1 (Deposition of Dr. Davis), at 68.

annual salary of $60,196 and Mr. Price's salary of $49,440 a year.

Plaintiff argues that NACEE's seniority system defense to her EPA claim is not applicable in this case because, she says, NACEE has failed to submit any standards, written or otherwise, for such a system.[66]   The Eleventh Circuit has held that an employer with a seniority system based on longevity "must be able to identify standards for measuring seniority which are systematically applied and observed." *Irby*, 44 F.3d at 954.  This court agrees that NACEE has failed to produce evidence indicating the existence of an even-handed policy or system for setting salaries or pay-raises based on seniority.  Rather, the NACEE staff handbook states that "salary increases will be effective once a year *on the basis of performance evaluation*."[67] Accordingly, the court finds that the seniority defense is not viable, because NACEE has failed to produce evidence demonstrating that it had a *bona fide* seniority system in place for determining the salaries and salary increases of its employees.

---

[66] In *California Brewers Association v. Bryant*, 444 U.S. 598 (1980), the Supreme Court defined a "seniority system" as used in Title VII as follows:

> a scheme that, alone or in tandem with non-"seniority" criteria, allots to employees ever improving employment rights and benefits as their relative lengths of pertinent employment increase.  Unlike other methods of allocating employment benefits and opportunities, such as subjective evaluations or educational requirements, the principal feature of any and every "seniority system" is that preferential treatment is dispensed on he basis of some measure of time served in employment.

*Bryant*, 444 U.S. at 605-06.

[67] *See* doc. no. 20, Exhibit 5 (Staff Handbook) (emphasis supplied).

NACEE more generally argues that the *experience* of Mr. Winn and Mr. Price at NACEE is the reason for the pay disparity among the coordinators.  *See Irby*, 44 F.3d at 956, n.10 ("For experience to be a legitimate 'any other factor other than sex' affirmative defense it need not rise to the level of an established seniority system."). In *Irby*, the Eleventh Circuit explained that "[b]usiness reasons, such as experience, are legitimate 'factors other than sex' so long as they can be rebutted."  The court noted that "[t]ime spent in a position equates with experience in the division . . . . Time is a measurable quantity one can sufficiently rebut." 44 F.3d at 956.  Simply put, "[e]xperience is an acceptable factor other than sex if [it is] not used as a pretext for differentiation because of gender." *Irby*, 44 F.3d at 956.

It is undisputed that, as of 2007, Mr. Winn and Mr. Price had approximately nineteen and seventeen years of experience at NACEE, respectively, while plaintiff had only five years of experience.  Moreover, plaintiff has not argued that experience is a pretext for the salary differentials.  Plaintiff does not assert that she has equal or more experience than Mr. Winn and Mr. Price, or that NACEE has inconsistently valued experience when setting salaries.  Plaintiff does argue that a male employee she supervised, Mr. Jimmie Lee Downing, was paid more than she was, but Mr. Downing still is another example of NACEE valuing experience because he had worked at NACEE since 1981.

-22-

The court therefore finds that NACEE has met its burden of demonstrating that a "factor other than sex" — experience — was responsible for the disparity in pay between plaintiff and Mr. Winn and Mr. Price.  The court further finds that plaintiff failed to present evidence indicating that the experience explanation is pretextual.  *See Steger v. General Electric Co.*, 318 F.3d 1066, 1078 (11th Cir. 2003) ("Once the employer's burden is met, the employee 'must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential.'") (quoting *Irby*, 44 F.3d at 954).  The experience of Mr. Winn and Mr. Price at NACEE is an objective basis for their salaries that plaintiff completely failed to rebut.  Therefore, NACEE is entitled to a judgment as a matter of law on plaintiff's Equal Pay Act claim.

## C.    Retaliation Claim

Plaintiff also claims that she was subjected to "unlawful discrimination or retaliation for participating in the EEO process or otherwise opposing conduct made unlawful by Title VII of the Civil Rights Act of 1964."[68]  Plaintiff offers no direct evidence of retaliation.  Therefore, her claim is due to be analyzed under the familiar *McDonnell Douglas*, burden-shifting framework.  *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Brungart v. BellSouth Telecommunication, Inc.*,

---

[68] *See* doc. no. 1 (Complaint), ¶ 14.

231 F. 3d 791, 798 (11th Cir. 2000).

A plaintiff generally must prove three elements to establish a *prima facie* case of retaliation:  (1) she engaged in statutorily protected conduct or expression; (2) she suffered an adverse employment action; and (3) there was a causal linkage between the protected conduct and the adverse employment action.  *See, e.g., Shannon v. BellSouth Telecommunications, Inc*., 292 F.3d 712, 715 (11th Cir. 2002).  Plaintiff asserts, and NACEE does not dispute, that she engaged in statutorily protected activity by complaining to Mr. Tibbs, her supervisor, that "she should be paid a general salary, a comparative salary that other personnel who hold her title receive."[69] Thus, plaintiff argues that NACEE had knowledge that she opposed the allegedly discriminatory practice of paying her less than her male comparators for substantially equal work.

Plaintiff next asserts that the Dr. Davis and Mr. Tibbs took adverse employment actions against her in retaliation for her act of complaining about unequal pay.  Plaintiff alleges that *Mr. Tibbs* took adverse employment actions against her by giving her lower employee evaluation marks in 2006 as opposed to previous years, presenting her with the March 3, 2005 memorandum that she characterizes as "threatening and lecturing style," and eliminating several of her job

---

[69] *See* doc. no. 19, Exhibit 3 (Deposition of Robert Tibbs), at 35.

duties and shifting his auditing duties to her.  Plaintiff alleges that *Dr. Davis* also took

an adverse employment actions against her by eliminating several of her job duties.

An employment action is considered sufficiently "adverse" to be actionable

under federal discrimination statutes "*only if* it results in some *tangible, negative*

*effect* on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249,

1261 (11th Cir. 2001) (emphasis supplied) (ADA retaliation claim).[70]  The "classic

and ultimate 'tangible employment action,'" of course, is termination of a person's

employment. *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1246 n.18 (11th

Cir. 1998).  Other "patently adverse" employment actions include "demotion,

reduction in pay, loss of prestige, or diminishment of responsibilities." *Doe v. Dekalb*

*County School District*, 145 F.3d 1441, 1448 (11th Cir. 1998) (discussing standards

for determining "adverse" employment actions in the context of an ADA transfer

claim).[71]  Actions falling short of those benchmarks sometimes are difficult to peg.

---

[70] *See also, e.g.*, *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (holding, in context of Title VII retaliation claim, that "[a]n adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'") (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).  *Cf. Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268, 141 L. Ed. 2d 633 (1998) (holding, in context of Title VII sexual harassment claim, that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").

[71] "Where a plaintiff has allegedly suffered termination, demotion, reduction in pay, loss of prestige, or diminishment of responsibilities, for example, a court normally has no cause to consider its standard for adversity; the relevant question in such cases is whether such patently adverse action

Even so, some guiding principles are fairly clear.

The fundamental principle is that Title VII is not a "general civility code"; accordingly, it does not protect employees from "the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).[72]  It follows, therefore, that an employment action does not become actionably *adverse* "merely because the employee dislikes it or disagrees with it."   *Doe*, 145 F.3d at 1449 (quoting *Perryman v. West*, 949 F. Supp. 815, 819 (M.D. Ala. 1996)); *accord McCoy v. Macon Water Authority*, 966 F. Supp. 1209, 1220 (M.D. Ga. 1997).  Neither "every

---

actually took place."  *Doe v. Dekalb County School Dist*, 145 F.3d 1441, 1448 (11th Cir. 1998) (citing *Eskra v. Provident Life and Accident Ins. Co*., 125 F.3d 1406, 1412 (11th Cir. 1997) (considering a reduction in income, but not mentioning the plaintiff's subjective preferences, when ruling that a transfer was adverse)).  The *Doe* Court elaborated on "loss of prestige" as an "adverse" employment action in a subsequent footnote, saying that "loss of prestige, either within an organization or with regard to the general public, is an objective factor that a court should consider as part of the reasonable person test.  Beyond the loss of prestige itself (a reasonable if egoistic employee goal much like salary or promotion), diminishment of prestige may also affect an employee's marketability, another significant objective factor."  *Doe*, 145 F.3d at 1452 n.19 (citing *de la Cruz v. New York City Human Resources Admin. Dep't of Soc. Serv.*, 82 F.3d 16, 21 (2d Cir. 1996)).

[72] *See also, e.g.*, *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (holding, in the context of a case founded on the Americans with Disabilities Act ("ADA"), that "the ADA, like Title VII, is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'") (citing *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir. 1998).  *Cf. McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994) (observing, in the context of an action founded on 42 U.S.C. § 1983, that the phrase "'adverse employment action' is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands").

unkind act,"[73] nor "everything that makes an employee unhappy,"[74] amounts to an *adverse* employment action.  "Otherwise, every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit."  *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (Posner, C.J.) (*quoted with approval in Doe*, 145 F.3d at 1449).

Ultimately, a plaintiff within the Eleventh Circuit must show a *serious and material* change in the terms, conditions, or privileges of her employment, and the plaintiff's subjective view of the significance of her employer's action is not controlling.  Rather, it must be demonstrated that a reasonable person, placed in the plaintiff's same position, would have viewed the contested employment action as materially "adverse" under all of the circumstances revealed by the evidence, before it may be said to rise to the level of an actionable, "adverse" employment action.  *See, e.g., Davis v. Town of Lake Park*, 245 F.3d at 1239; *Doe*, 145 F.3d at 1449 ("An ADA plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse.").[75]  "Any adversity must be material; it

_____

[73] *Doe v. Dekalb County School District*, 145 F.3d 1441, 1449 (11th Cir. 1998) (quoting *Wu v. Thomas*, 996 F.2d 271, 273 n.3 (11th Cir. 1993) (*per curiam*)).

[74] *Doe*, 145 F.3d at 1450 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)); *see also Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996) ("not everything that makes an employee unhappy is an actionable adverse action.").

[75] In *Doe v. Dekalb Co. School Dist.*, 145 F.3d 1441 (11th Cir. 1998), the court addressed an issue of first impression within the Eleventh Circuit:  *i.e.*, "whether a court should view an employment action from the subjective perspective of a particular plaintiff or the objective

is not enough that a transfer[, or any other contested employment action,] imposes some *de minimis* inconvenience or alteration of [the terms, conditions, privileges, or] responsibilities [of the plaintiff's job position]."  *Id.* at 1453 (citing *Crady v. Liberty National Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)) (footnote omitted);[76] *see also Davis v. Town of Lake Park*, 245 F.3d at 1239 ("Whatever the benchmark,

---

perspective of a 'reasonable person.'"  *Id.* at 1447.  The *Doe* case addressed a claim founded upon the Americans with Disabilities Act ("ADA").  Nevertheless, as the court noted, Eleventh Circuit precedent interpreting Title VII, the Age Discrimination in Employment Act, and the ADA "have often relied on the same 'adverse employment action' concept that is an essential element of a *prima facie* ADA case. . . .  We can assist our consideration of the adversity standard under the ADA, therefore, by looking to the broader experience of our court and others with employment discrimination law."  *Doe*, 145 F.3d at 1448 (citations omitted).  As noted in text, the *Doe* court adopted an objective test:  a plaintiff establishes an "adverse employment action" only if he "demonstrate[s] that a reasonable person in his position would view the employment action in question as adverse."  *Id.* at 1449.  "Any adversity must be material; it is not enough that [the contested employment action] imposes some *de minimis* inconvenience or alteration of responsibilities."  *Id.* at 1453.

[76] In the omitted footnote, the *Doe* Court observed that:

It is important not to make a federal case out of a transfer that is *de minimis*, causing no objective harm and reflecting a mere chip-on-the-shoulder complaint.  However, it is equally important that the threshold for what constitutes an adverse employment action not be elevated artificially, because an employer's action, to the extent that it is deemed not to rise to the level of an adverse employment action, is removed completely from any scrutiny for discrimination.  In other words, where the cause or motivation for the employer's action was clearly its employee's disability, a finding that the action does not rise to the level of an adverse employment action means that the action is not scrutinized for discrimination.  An artificially high threshold for what constitutes an adverse employment action would undermine the purposes of the statute by permitting discriminatory actions to escape scrutiny.  We believe that the purposes of the statute are appropriately served by requiring the fact finder to determine whether a reasonable person would consider the action adverse under all the facts and circumstances.

*Doe*, 145 F.3d at 1453 n. 21.

it is clear that to support a claim under Title VII's anti-discrimination clause the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job *in a real and demonstrable way*.") (emphasis supplied).

In other words, employment decisions that fall short of "patently adverse" employment actions — defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) — "must meet 'some threshold level of substantiality . . . to be cognizable'" under Title VII. *Gupta*, 212 F.3d at 587 (quoting *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)); *see also Smith v. Alabama Department of Public Safety*, 64 F. Supp. 2d 1215, 1221-22 (M.D. Ala. 1999) (finding that a Title VII plaintiff could not establish an "adverse" employment action, because he suffered no loss in pay, benefits, or classification, only great embarrassment). "In sum, [the plaintiff] must demonstrate that a reasonable person in his position would have found the transfer [or other contested employment action] to be adverse under all the facts and circumstances." *Doe*, 145 F.3d at 1453.

1. The March 3, 2005 memorandum

Plaintiff testified that she considered the March 3, 2005 memorandum from Mr.

-29-

Tibbs "to be lecturing, I consider it to be retaliation."[77]  The general rule is that "[t]he reprimand of an employee does not constitute an adverse employment action when the employee suffers no tangible harm as a result." *Summerlin v. M & H Valve Company*, 167 Fed. Appx. 93, 97 (11th Cir. 2006) (citing, *inter alia*, *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001)).  *See also*, *e.g.*, *Davis v. Town of Lake Park*, 245 F.3d 1232, 1241 (11th Cir. 2001) (holding that "courts are wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline"); *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002) (holding that "formal criticisms or reprimands, without any additional disciplinary action such as a change in grade, salary, or other benefits, do not constitute adverse employment actions"); *Weeks v. New York State Division of Parole*, 273 F.3d 76, 86 (2d Cir. 2001) (same); *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001) (holding that written reprimands were insufficient to constitute adverse employment action where the plaintiff "was not demoted in title, did not have his work schedule changed, was not reassigned to a different position or location . . . , did not have his hours or work changed or altered in any way, and [] was not denied any pay raise or promotion as

---

[77] *See* doc. no. 19, Exhibit 2 (Deposition of plaintiff), at 66.

a result of these reprimands").

Plaintiff has not presented any evidence indicating that the March 3, 2005 memorandum resulted in a demotion, pay cut, or other tangible consequence. *Cf. Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 94 (D.D.C. 2005) ("A reprimand that 'amounts to a mere scolding, without any disciplinary action which follows, does not rise to the level of adverse action.'") (internal citation omitted). Accordingly, the memorandum does not constitute a cognizable "adverse" employment action.

2. Lower marks on the 2006 performance evaluation

Any discussion of performance evaluations must start with reference to the Eleventh Circuit's decision in *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249 (11th Cir. 2001), in which the Court held that negative performance evaluations, "standing alone, do not constitute [an] adverse employment action sufficient to satisfy the second element of a *prima facie* case of retaliation under the ADA." *Lucas* 257 F.3d at 1261. However, that general principle has an exception, as the Eleventh Circuit recently clarified: *i.e.*, "an evaluation that *directly disentitles* an employee to a raise of any significance is an adverse employment action under Title VII." *Gillis v. Georgia Department of Corrections*, 400 F.3d 883, 888 (11th Cir. 2005) (emphasis supplied). *See also Brown v. Snow*, 440 F.3d 1259, 1265 (11th Cir. 2006) ("A lower score on Brown's performance evaluation, by itself, is not actionable under Title VII

-31-

unless Brown can establish that the lower score led to a more tangible form of adverse action, such as ineligibility for promotional opportunities.").

Plaintiff asserts that "the fact that [her] employee evaluation marks decreased from 2004 to 2006 materially effected [sic] her prospect for a pay increase, if the handbook is taken to accurately reflect NACEE's salary policy."[78]  However, no NACEE employee was *entitled* to a discretionary salary increase; and, it is undisputed that none of the five coordinators received a salary increase from January 1, 2004 through the date on which this action was filed.

Other than what was said in *Gillis* about "direct disentitlement," the Eleventh Circuit apparently has not confronted this question of whether a performance evaluation that disqualifies an employee from eligibility for receipt of future discretionary compensation constitutes an adverse employment action.  At least one circuit, however, has answered that question in the negative.  *See Powell v. Rumsfeld*, 42 Fed. Appx. 856, 860 (7th Cir. 2002) ("The potential of losing an already discretionary bonus does not, however, constitute a material change [in working conditions].") (citing *Rabinovitz v. Pena*, 89 F.3d  482, 488-89 (7th Cir. 1996) (holding, in turn, that "loss of a bonus is not an adverse employment action in a case such as this where the employee is not automatically entitled to the bonus")).  These

---

[78] Doc. no. 20, at 21.

decisions are well-reasoned, and in the absence of any Eleventh Circuit cases on point, this court is persuaded that it should follow them, as they seem consistent with the principles enunciated in *Gillis*.  Because NACEE employees were not entitled to salary increases as a result of high marks on their performance evaluations, the lower marks on plaintiff's 2006 performance evaluation did not directly disentitle her to a raise.  Accordingly, the court finds that the lower performance evaluation marks were not an adverse employment action.

### 3. Elimination of some job duties and the addition of a job duty

Plaintiff also contends that the elimination of several of her job duties by Dr. Davis and Mr. Tibbs constitutes an adverse employment action.  *See Burlington Northern & Sante Fe Railway Co. v. White*, 548 U.S. 53, 71 (2006) ("To be sure, reassignment of job duties is not automatically actionable.  Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case.").  Plaintiff specifically asserts that Dr. Davis and Mr. Tibbs excluded her from staff meetings and interviews, stopped asking her to train employees, excluded her from drafting a funding proposal, and forbid her to attend a conference with other coordinators.  Plaintiff also asserts that Mr. Tibbs  shifted some of his auditing duties to her.  The court finds that the elimination of several secondary job duties, and the addition of auditing responsibilities, were not sufficiently significant to constitute a

materially adverse change in the terms and conditions of plaintiff's employment. Plaintiff's primary duties of "coordinat[ing] staff activities to ensure that project goals are achieved," "[d]eveloping workshops and activities," and "scheduling counseling/tutoring activities" were not altered or eliminated.[79]

Additionally, plaintiff has failed to produce evidence establishing the causal connection element of a *prima facie* case. "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). *Accord Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) ("[A] plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action."). *See also*, *e.g.*, *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) ("[A] plaintiff must show that 'the decisionmakers were aware of the protected conduct,' and 'that the protected activity and the adverse action were not wholly unrelated.'") (quoting *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1337 (11th Cir. 1999)).

"Close temporal proximity between the protected activity and the adverse action *may* be sufficient to show that the two were not wholly unrelated." *Bass,* 256

---

[79] *See* doc. no. 20, Exhibit 4 (Job Description Sheet) and Exhibit 5 (Staff Handbook).

F.3d at 1119 (citing *Gupta*, 212 F.3d at 590) (emphasis supplied).  The Supreme Court has indicated that, to be sufficient standing alone, the temporal gap between events must be "'very close.'"  *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001) (*per curiam*) (quoting *O'Neal v. Ferguson Construction Company*, 237 F.3d 1248, 1253 (10th Cir. 2001)).[80]

Plaintiff asserts that "NACEE's knowledge of [plaintiff's] opposition further establishes a causal link between her opposition and NACEE's adverse employment actions."[81]  Plaintiff only supports her assertion of NACEE's knowledge of her opposition to unequal pay with Mr. Tibbs's deposition testimony that he had heard plaintiff complain about unequal pay.[82]  Plaintiff has not produced any evidence indicating when she complained to Mr. Tibbs about unequal pay, or any evidence indicating that Mr. Tibbs heard her complaint prior to subjecting her to the alleged

---

[80] In full text, the Supreme Court's statement in *Breeden* concerning temporal proximity is as follows:

> The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be "very close," *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (C.A.10 2001).  *See e.g., Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (C.A.10 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (C.A.7 1992) (4-month period insufficient).  Action taken (as here) 20 months later suggests, by itself, no causality at all.

*Breeden*, 532 U.S. at 273-74.

[81] *See* doc. no. 20, at 22.

[82] *Id.*

retaliatory conduct.

Because plaintiff has failed to establish a *prima facie* case of retaliation, there are no genuine issues of material fact, and NACEE is entitled to judgment as a matter of law.

**D.    Hostile Work Environment Claim**

Plaintiff's complaint also alleges that NACEE "subjected her to a hostile work environment constituting discrimination or otherwise subjecting her to adverse employment conditions because of her sex."[83]

To succeed on a claim that NACEE created a sexually hostile work environment, plaintiff must show that:  (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based upon her sex; (4) the harassment was sufficiently severe or pervasive as to alter the terms and conditions of her employment; and (5) there is a basis for holding her employer responsible under a theory of either vicarious or direct liability.  *See, e.g.*, *Faragher*, 524 U.S. at 784-790; *Ellerth*, 524 U.S. at 753-54; *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 508 (11th Cir. 2000).

"Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'"  *Oncale v. Sundowner*

---

[83] *See* doc. no. 1 (Complaint), ¶ 6.

*Offshore Services, Inc.*, 523 U.S. 75, 80 (1988); *see also Mendoza v, Borden*, 195 F.3d 1238, 1254 (1999) ("Title VII was never intended to protect employees from all unpleasant and rude conduct in the workplace.") (Edmondson, J., concurring).  The "critical issue," according to the Supreme Court, "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)).  Stated somewhat differently,

> [t]he essence of a disparate treatment claim under Title VII is that an employee or applicant is intentionally singled out for adverse treatment on the basis of a prohibited criterion.  . . .  In proving a claim for a hostile work environment due to sexual harassment, therefore, the plaintiff must show that but for the fact of her sex, she would not have been the object of harassment.  . . .

*Henson v. City of Dundee*, 682 F.2d 897, 903-04 (1987) (citations omitted).  "[U]nfair treatment of an employee, standing alone, does not make out a Title VII case; the mistreatment must be because the employee was female." *Bell v. Crackin Good Bakers, Inc.*, 777 F.2d 1497, 1504 (11th Cir. 1985) (Hill, J., concurring in part; dissenting in part).

When the allegedly harassing conduct is not clearly sexual in nature, a plaintiff may be required to make a showing that co-workers of the opposite sex were treated

better.  *See Mendoza*, 195 F.3d at 1254 (Edmondson, J., concurring) ("[W]hen the

sexual content of a supervisor's conduct is not obvious, a plaintiff asserting a claim

of sexual discrimination in employment must present some evidence that plaintiff's

coworkers, those not of plaintiff's sex, were treated differently and better.  Otherwise,

Title VII's *vital* element — discrimination [*i.e.*, disparate treatment] — is read out of

the statute." (emphasis in original)).

Plaintiff argues that the March 3, 2005 memorandum from Mr. Tibbs, and

evidence indicating that NACEE removed some of her job responsibilities, "shows

a factual issue over whether NACEE intentionally created a hostile work environment

for [plaintiff] due to discrimination or retaliation for her opposition to [its]

discriminatory pay practices."[84]  Plaintiff argues that these incidents were based on

her sex because Dr. Davis once told plaintiff that Mr. Tibbs "had a problem with [her]

as a woman."[85]  Yet, Mr. Tibbs's March 3, 2005 memorandum was clearly not sexual

in nature, and plaintiff has failed to produce any connection between it and Mr.

Tibbs's alleged "problem" with plaintiff as a woman.  Even if plaintiff holds a

subjective belief that the conduct of Dr. Davis and Mr. Tibbs was sexual harassment,

that belief is not objectively reasonable.  Moreover, plaintiff has not produced *any*

---

[84] *See* doc. no. 20, at 23.

[85] *See* doc. no. 19, Exhibit 2 (Deposition of plaintiff), at 24.

evidence indicating that Dr. Davis or Mr. Tibbs treated male employees better than female employees.  The court finds that plaintiff has failed to show a genuine issue of material fact that she was subjected to sexually harassing conduct by Dr. Davis and Mr. Tibbs, and NACEE is entitled to judgment as a matter of law.

### IV. CONCLUSION

Based on all of the foregoing, defendant's motion for summary judgment is due to be granted, and all of plaintiff's claims are due to be dismissed with prejudice.  A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 12th day of November, 2008.

_____
United States District Judge